# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

NOV 13 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

One Black T-Mobile Cellular Telephone
Model: REVVL PLUS C3701A;  FCC ID: R38YL3701A
IMEI No: 861273035232017

Case No. **19 MJ 11421**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Harboring of Certain Illegal Aliens and Conspiracy to the Same |

The application is based on these facts:

See attached Affidavit of Agent Andres Salazar, U.S. Border Patrol

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Agent Andres Salazar, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  11/13/19

City and state:  El Centro, CA

_____
*Judge's signature*

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black T-Mobile Cellular Telephone
> Model: REVVL PLUS C3701A
> FCC ID: R38YL3701A
> IMEI No: 861273035232017
> (“**Target Device**”)

Target Device is currently in the custody of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone(s) for evidence described below. The seizure and search of the cellular telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 1, 2019 through November 4, 2019:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

## **AFFIDAVIT**

I, Andres Salazar, being duly sworn, hereby state as follows:

## **INTRODUCTION**

1.    I submit this affidavit in support of an application for warrant(s) to search the following electronic device:

> Black T-Mobile Cellular Telephone
> Model: REVVL PLUS C3701A
> FCC ID: R38YL3701A
> IMEI No: 861273035232017
> (**"Target Device"**)

as further described in Attachment A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrants relate to the investigation and prosecution of PERLA GUERRERO, Javier Miranda, and Julian Miranda for harboring illegal aliens within the United States and conspiracy to commit the same. *See United States v. Miranda, et. al.*, Case No. 19-cr-4377-BAS, (S.D. Cal.) at ECF No. 1 (Indictment). The Target Device was found inside GUERRERO's purse incident to GUERRERO's arrest on November 4, 2019. The **Target Device** is currently in the custody of Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient probable cause for the requested warrant(s) and does not purport to set forth all of my knowledge of the investigation into this matter.   Dates and times are approximate.

## TRAINING AND EXPERIENCE

4.     As a USBP Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States and thereby authorized to request issuance of federal seizure warrants. As an agent with the USBP, my responsibilities include the investigation of possible violations of Titles 8, 19, 18, and 21. I have been an agent with the USBP since March 2008.

5.     I am a graduate of the USBP Academy and Federal Law Enforcement Training Center. As part of my training, I received criminal investigation training that included course studies in, among other things, criminal law, immigration law, constitutional law, search and seizures, and courtroom procedure.

6.     I currently am assigned to the El Centro Sector Intelligence Unit ("ELC SIU"). ELC SIU is tasked with investigating, arresting, and prosecuting alien smuggling organizations that use the Southern and Central Districts of California as an operational corridor. ELC SIU is also tasked with investigating narcotics smuggling and bulk cash smuggling. ELC SIU agents deploy in plainclothes attire and drive unmarked bureau vehicles.

7.     In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

8.     During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

9.     Through the course of my training, investigations, and conversations with

2

1  other law enforcement personnel, I have gained a working knowledge of the operational
2  habits of alien smugglers and alien transporters, in particular those who attempt to smuggle
3  aliens into the United States from Mexico and transport them throughout the Southern
4  District of California. I am aware that it is a common practice for alien smugglers to work
5  in concert with other individuals and to do so by utilizing cellular telephones to maintain
6  communications with co-conspirators and/or illegal aliens in order to further their criminal
7  activities. Because they are mobile, the use of cellular telephones permits alien smugglers
8  and transporters to easily carry out various tasks related to their smuggling activities,
9  including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,
10  providing instructions to transporters, guiding aliens to specific pick up locations, warning
11  accomplices about law enforcement activity in the area and the status of check-point
12  operations, and communicating with co-conspirators who guide aliens, coordinate drop off
13  locations, and/or operate alien stash houses.

14      10.    The smuggling of aliens generates many types of evidence, including, but not
15  limited to, cellular phone-related evidence such as voicemail messages referring to the
16  arrangements of travel, names, photographs, text messaging (via SMS or other
17  applications), and phone numbers of co-conspirators and illegal aliens. For example,
18  drivers and passengers responsible for transporting illegal aliens are typically in telephonic
19  contact with co-conspirators immediately prior to and/or following the crossing of the
20  illegal aliens at the border, at which time they receive instructions, including where to pick-
21  up the illegal aliens for transportation into the United States and where to take the illegal
22  aliens after crossing into the United States. These communications may also include
23  locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in
24  telephonic contact with co-conspirators prior to and following their crossing in order to
25  make smuggling arrangements, receive instructions, and report their locations after
26  crossing.

27      11.    Based upon my training, experience, and consultations with law enforcement
28  officers experienced in alien smuggling investigations, and all the facts and opinions set

3

forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

12.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.   tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//

## **FACTS SUPPORTING PROBABLE CAUSE**

13.     On October 1, 2019, U.S. Border Patrol Agents ("BPAs") executed a federal search warrant issued by Magistrate Judge Ruth Bermudez Montenegro on a trailer located at El Centro RV Park, LLC, 2025 Cottonwood Circle, Unit 31, El Centro, California 92243 (the "Trailer"). *See In re El Centro RV Park, 2025 Cottonwood Circle, Unit 31, El Centro, California 92243*, 19-MJ-10897 (S.D. Cal. Sept. 27, 2019). BPAs identified the Trailer as a potential alien smuggling stash house through surveillance, custodial interviews, and the El Centro Police Department's apprehension of five illegal aliens in the Trailer on July 5, 2019. A stash house is a residence or other dwelling used as a short-term housing area for human smuggling. In most alien smuggling schemes, the alien will cross the US/Mexico border illegally. Once the alien has made it north of the border undetected, a smuggler will pick the alien up and drive him/her to a motel or stash house. The smuggling organization will then finalize payments with the aliens' sponsor who is paying the smuggling fees. Once payments are made, the alien will be delivered to his/her final destination. After the July 5, 2019 encounter, BPAs began constant surveillance of the Trailer and Value Inn Motel across the street at 2030 Cottonwood Circle, El Centro, California 92243 (the "Value Inn").

14.     On or about July 15, 2019, the El Centro Police Department informed USBP agents that GUERRERO visited the El Centro Police Station and stated that the Trailer belongs to her. Agents searched Accruint (a law enforcement search database) for GUERRERO's known address. GUERRERO lists 2025 Cottonwood Circle, El Centro, CA 92243—the lot on which the Trailer is located—as her primary address. The Trailer—a 1998 Fleetwood Park Model (CA license plate 1MG7067)—is registered to Isabela Guerrero, who is the mother of GUERRERO. During subsequent surveillance of the Trailer, agents observed GUERRERO living at the Trailer. Agents also observed GUERRERO and Gabriel Velasquez-Gastelum entering and exiting the Trailer almost daily from June 20, 2019 through September 27, 2019. On May 5, 1999, Velasquez was arrested for alien smuggling in violation of 8 U.S.C. § 1324 and processed administratively. Most recently, on August 8, 2019, Velasquez was arrested for and later pled guilty to

transportation of illegal aliens in violation of 8 U.S.C. § 1324 in the Southern District of California case number 19-cr-03459-H.

15.    BPAs observed alien smuggling activity at both the Trailer and rooms rented by GUERRERO under pseudonyms at the Value Inn and applied for a search warrant from Magistrate Judge Ruth Montenegro based on the details of those observations. On September 27, 2019, Magistrate Judge Ruth Bermudez Montenegro issued a search warrant allowing USBP agents to execute a search of the Trailer before October 11, 2019. *See In re El Centro RV Park, 2025 Cottonwood Circle, Unit 31, El Centro, California 92243*, 19-MJ-10897 (S.D. Cal. Sept. 27, 2019).

16.    On or about September 30, 2019, USBP agents conducting surveillance on the Trailer observed a gold Ford Sports Track arrive at the Trailer. The driver, later identified as Santiago Ramirez-Arce, spoke with Javier Miranda, and then USBP agents observed individuals exit the Trailer and load into the Ford Sports Track. USBP agents followed the Ford Sports Track as it travelled within El Centro, California and then to Yuma, Arizona. The Ford Sports Track drove into the desert outside of Yuma, Arizona, unloaded the illegal aliens to hide in the bushes in a remote area, and was ultimately apprehended. After being advised of and waiving his rights pursuant to *Miranda*, Ramirez admitted to picking up six illegal aliens from Javier Miranda at the Trailer and smuggling them east to Yuma, Arizona, with a final destination of Los Angeles, California. Four of the men in Ramirez's vehicle were found and apprehended; they each admitted to being citizens of Mexico who had illegally entered the United States. Two of the men positively identified Javier Miranda from a photographic line-up as the caretaker of the Trailer; the other men and driver were unable to identify their caretaker. Additionally, one of the men being smuggled, Manuel Botello-Madrigal also informed agents that while he and five others were loaded into the car, three additional illegal aliens stayed in the Trailer waiting for another ride.

17.    The next day, on October 1, 2019, USBP agents prepared to execute Magistrate Judge Montenegro's search warrant on the Trailer. On October 1, 2019, at approximately 12:30 p.m., while preparing to execute the search warrant on the Trailer,

Case 2:19-mj-11421-RBM Document 1 Filed 11/13/19 PageID.10 Page 10 of 14

1  BPA G. Guerrero observed Javier Miranda exit a motel room at the Value Inn Motel located
2  across the street from the Trailer. Javier Miranda approached a white Chevrolet Cobalt with
3  a large black bag. BPAs Guerrero and O. Valenzuela did not want JAVIER MIRANDA to
4  leave the area prior to the execution of a warrant. BPAs Guerrero and Valenzuela
5  approached Javier Miranda and identified themselves as Border Patrol Agents while
6  showing their badges. BPA Guerrero asked Javier Miranda what was inside the bag and he
7  stated that the bag was full of dirty clothing. BPA Valenzuela noticed Julian Miranda
8  walking out of the motel and approached him. BPA Valenzuela identified himself and
9  explained that he was conducting an investigation. BPA Valenzuela advised Julian
10 Miranda that he was being detained pending an investigation. BPA Guerrero advised Javier
11 Miranda he was under investigation pending the execution of the search warrant. Julian
12 Miranda gave USBP agents consent to search his motel room (Room #112). Inside the
13 room, BPA Guerrero observed several black bags of dirty clothing. Alien Smugglers
14 sometimes swap out the clothing of the aliens because the clothing is often wet, muddy, or
15 dirty from the rugged terrain in the vicinity of the International Border. The clerk of the
16 Value Inn identified GUERRERO as the individual renting Room #112 but informed
17 agents she was renting it under the alias "Viri Estrella."

18      18.    On October 1, 2019, at approximately 1:05 p.m., BPAs executed the search
19 warrant on the Trailer. Using a loud speaker, BPAs ordered all occupants to exit the
20 residence. When nobody complied with the commands, BPAs conducted a forced entry
21 into the Trailer. BPAs extracted twelve individuals from the trailer and found various mail
22 correspondence addressed to GUERRERO.[1] BPA Salazar conducted an immigration
23 inspection, and all twelve individuals in the Trailer admitted to being citizens of Mexico

24 _____
   [1]     The twelve individuals were later identified as Jorge BENITEZ-Rojas (BENITEZ),
25 Hector FLORES-Lopez (FLORES-Lopez), Ricardo FLORES-Rosas (FLORES-Rosas),
   Amadeo    GARCIA-Alvarez    (GARCIA),    Paulino    HERNANDEZ-Martinez
26 (HERNANDEZ), Francisco Javier LEON-Rodriguez (LEON), Concepcion MARTINEZ-
27 Cardoza (MARTINEZ), Eduardo PEREZ-Guzman (PEREZ), Mateo SEGUNDO-Ortiz
   (SEGUNDO), Francisco Alejandro TRUJILLO-Gonzalez (TRUJILLO), Martin ZAPIEN-
28 Becerra (M. ZAPIEN) and Rene Zapien-Becerra (R. ZAPIEN).

1  illegally in the United States. GUERREO's co-defendants—Javier Miranda and Julian
2  Miranda—and the twelve subjects were placed under arrest. GUERRERO was not present
3  at the Trailer at the time agents executed the search warrant.

4      19.    At the Border Patrol Station, USBP agents interviewed the twelve individuals
5  in the Trailer. All twelve individuals admitted to being citizens of Mexico who had illegally
6  entered the United States. BENITEZ, FLORES-Lopez, FLORES-Rosas, GARCIA, LEON,
7  MARTINEZ, PEREZ, SEGUNDO, TRUJILLO, M. ZAPIEN and R. ZAPIEN stated that
8  they made arrangements in Mexico to be smuggled into the United States for amounts
9  between $7,000.00 and $8,000.00 USD.

10     20.    The men found in the Trailer were shown a six-pack photographic lineups of
11 co-defendants Javier and Julian Miranda, and some men were shown six-pack
12 photographic line-ups of GUERRERO. FLORES-Rosas and GARCIA identified Julian
13 Miranda as one of the caretakers of the Trailer. LEON, MARTINEZ, and ORTIZ identified
14 Javier Miranda as one of the caretakers, including as the individual believed to be in charge
15 of the Trailer and who stated he would be contacting the men's families for payment.
16 FLORES-Lopez identified GUERRERO as the woman who stopped by the Trailer to
17 provide the men food and drinks; ORTIZ also stated that a heavy-set female with straight
18 hair came and went from the Trailer with Javier Miranda and appeared to be in charge of
19 the Trailer with Javier Miranda. Surveillance footage shows what appears to be Javier
20 Miranda and GUERRERO entering the Trailer on October 1, 2019 at approximately 9:31
21 a.m., while the twelve men were in the Trailer and shortly before agents executed their
22 search warrant. The remaining men did not positively identify GUERRERO.

23     21.    On October 30, 2019, a federal grand jury returned an indictment charging
24 GUERRERO, Julian Miranda, and Javier Miranda with one count of conspiracy to harbor
25 aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii),(v)(i), and twelve counts of harboring
26 certain aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii),(v)(II). *United States v. Miranda*
27 *et al.*, Case No. 19-CR-04377-BAS, ECF No. 1. Magistrate Judge Barbara L. Major issued
28 an arrest warrant for GUERRERO, and GUERRERO was arrested on November 4, 2019.

22. In my training and experience, alien smugglers, caretakers, and transporters may be involved in the planning and coordination of alien smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Accordingly, I request permission to search the **Target Device** for data beginning from July 1, 2019 through November 4, 2019, the day of GUERRERO's arrest. The date range is based on the fact that USBP, in coordination with El Centro Police Department, first found a group of illegal aliens at the Trailer on July 5, 2019, and would have required planning in the days leading up to July 5, 2019. After El Centro Police Department's search, GUERRERO went to the El Centro Police Department and claimed ownership of the Trailer. Based on my training and experience, caretakers of stash houses are integrated members of the alien smuggling operation. Accordingly, I believe there is probable cause to believe that GUERRERO's involvement in the conspiracy to harbor and transport aliens began in the months prior to the October 1, 2019 arrest and extended to the July 5, 2019 smuggling event and the days of planning leading up to it. I also believe there is probable cause to believe that GUERRERO continued engaging in the conspiracy and/or communicated regarding it after her co-defendants' arrest on October 1, 2019 and leading up to her arrest on November 4, 2019.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

1   environment or, if possible, started in "flight mode" which disables access to the network.
2   Unlike typical computers, many cellular telephones do not have hard drives or hard drive
3   equivalents and store information in volatile memory within the device or in memory cards
4   inserted into the device. Current technology provides some solutions for acquiring some of
5   the data stored in some cellular telephone models using forensic hardware and software.
6   Even if some of the stored information on the device may be acquired forensically, not all
7   of the data subject to seizure may be so acquired. For devices that are not subject to forensic
8   data acquisition or that have potentially relevant data stored that is not subject to such
9   acquisition, the examiner must inspect the device manually and record the process and the
10  results using digital photography. This process is time and labor intensive and may take
11  weeks or longer.

12          24.     Following the issuance of this warrant, a case agent familiar with the
13  investigation will collect the **Target Device** and subject it to analysis. All forensic analysis
14  of the data contained within the telephone and its memory cards will employ search
15  protocols directed exclusively to the identification and extraction of data within the scope
16  of this warrant.

17          25.     Based on the foregoing, identifying and extracting data subject to seizure
18  pursuant to this warrant may require a range of data analysis techniques, including manual
19  review, and, consequently, may take weeks or months. The personnel conducting the
20  identification and extraction of data will complete the analysis within 90 days, absent
21  further application to this court.

22                                  **CONCLUSION**

23          26.     Based on the facts and information set forth above, there is probable cause
24  to believe that a search of the **Target Device** will yield evidence of PERLA GUERRERO's
25  violations of Title 8, United States Code, Sections 1324.

26          27.     Because the **Target Device** was seized at the time of PERLA GUERRERO's
27  arrest  and has been securely stored since that time, there is probable cause to believe that

28

1 such evidence continues to exist on the **Target Device**. As stated above, I believe that the
2 appropriate date range for this search is from July 1, 2019 through November 4, 2019.

3        28.     Accordingly, I request that the Court issue a warrant authorizing law
4 enforcement to search the item(s) described in Attachment A, and seize the items listed in
5 Attachment B using the above-described methodology.

6        I swear the foregoing is true and correct to the best of my knowledge and belief.

7

8                                        _____
9                                        Andres Salazar
                                         Border Patrol Agent
10
11 Subscribed and sworn to before me this _13th_ day of November, 2019.

12

13

14 Hon. Ruth Bermudez Montenegro
   United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28